Connie HESS, Andrew C. Hess, II, Andrew Hess, III, and Andrea Hess, Respondents,

v.

Wanda G. PROFFER, Personal Representative of the Estate of Margueritte Proffer, deceased, Michael Proffer, Shabie Sue Bird, and George F. Proffer, Jr., a disabled person, and Wanda Proffer, Michael Proffer and Shabie Sue Bird, Guardians and Conservators of George F. Proffer, Jr., Appellants.

No. 24774.

Missouri Court of Appeals, Southern District, Division One.

Oct. 31, 2002.

Hal E. Hunter, Jr., Hunter & Hunter, New Madrid, for Appellants.

James E. Reeves, Ward & Reeves, Caruthersville, for Respondents.

ROBERT S. BARNEY, Judge.

Appellants appeal from that portion of an interlocutory judgment entered by the Circuit Court of New Madrid County, Missouri, partitioning in kind approximately 690 acres of land, known as Tract One, located in New Madrid County, Missouri.

In its interlocutory judgment, the circuit court determined that Respondents are the owners in fee of an undivided one-fourth interest in Tract One and that Appellants are owners in fee of an undivided three-fourths interest in Tract One. Since the circuit court determined the respective quantum of interest of the parties in Tract One, we have jurisdiction to review this appeal. § 512.020, RSMo 1994; *See Unsel*

*v. Meier*, 880 S.W.2d 646, 647–48 (Mo.App. 1994); *see generally Young v. Young*, 175 S.W. 585 (Mo.1915); *Lee's Summit Bldg. & Loan Ass'n v. Cross*, 345 Mo. 501, 134 S.W.2d 19, 22–23 (1939); and *England v. Poehlman*, 359 Mo. 369, 221 S.W.2d 742, 743–44 (Mo.1949).

Appellants raise three points of trial court error, discussed below. We affirm the judgment of the circuit court.

At trial, the parties filed a joint stipulation of facts. "In a court-tried case, the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law." *Duckett Creek Sewer Dist. v. Golden Triangle Dev. Corp.*, 32 S.W.3d 178, 181 (Mo.App.2000). When a case is tried on stipulation of facts, the only issue on appeal is whether the trial court drew the proper legal conclusions from the stipulated facts. *Id.*

The parties common source of title to the land in dispute were Elon Proffer and Berta Moore Proffer, husband and wife, who executed two general warranty deeds. Both deeds were dated January 10, 1958, and conveyed the same 690 acres of farmland.[1]

The first of the two deeds contains the following pertinent language:

> THIS DEED ... by and between Elon Proffer and Berta Moore Proffer, his wife ... parties of the first part and George Franklin Proffer for his lifetime, and at his death to his wife Margueritte Proffer if she survive [sic] him for her lifetime only, and then to the bodily heirs of said George Franklin Proffer ... party of the second part.

---

1. No explanation exists in the record why two deeds were executed on the same date. The second deed was filed eight years after the first, after the death of lifetime grantee George Franklin Proffer.

... GRANT, BARGAIN AND SELL, convey AND CONFIRM unto the said party of the second part for his lifetime, and at his death to his bodily heirs....

...

TO HAVE AND TO HOLD ... unto the said party of the second part for his lifetime, and at his death to his wife Margueritte Proffer if she survives him for her lifetime only, and then to the bodily heirs of said George Franklin Proffer.

The second deed contained the following pertinent language:

THIS DEED ... by and between Elon Proffer and Berta Moore Proffer ... parties of the first part, and George Franklin Proffer for his lifetime and at his death to his wife, Margueritte Proffer for her lifetime and at her death to the heirs of the body of George Franklin Proffer ...

... Grant Bargain and Sell, Convey and Confirm unto the said party of the second part for his lifetime, and at his death to his bodily heirs....

...

To Have and to Hold ... unto the said party of the second part for his lifetime and at his death to his wife Margueritte Proffer for her lifetime, and at her death to the heirs of the body of George Franklin Proffer....

George Franklin Proffer died in 1966 survived by four children: George F. Proffer Jr., Charles Thomas Proffer, Michael David Proffer, and Shabie Proffer Bird. He was also survived by his wife Margueritte Proffer, who died in 2001.

Charles Thomas Proffer died in 1974. His sole and only heir at law was a daughter, Stephanie Paige Proffer. She died in 1990. She devised all of her interest in the land at issue here to Respondents by her last will and testament which was duly probated.

■ The salient issue before this Court is: when did the remainder interest, created by the deeds executed by Elon and Berta Proffer in 1958, vest? At the death of George Franklin Proffer in 1966 or at the death of Margueritte Proffer, in 2001?

The primary gist of Appellants' three points relied on is that the trial court erred by not dismissing Respondents' first amended petition in partition and in entering an interlocutory judgment in partition dividing the interests of the parties as it did. They maintain that by use of the word "then," as found in the first deed, the original grantors, Elon and Berta Proffer, sought to delay the vesting of the remainder fee interest in the land in question until after the death of Margueritte Proffer. They argue that since Respondents were not bodily heirs of George Franklin Proffer, but devisees under the will of Stephanie Paige Proffer, Respondents took no interest in the land in question.[2]

Respondents counter that Missouri abolished the common law fee tail in 1825 and substituted a statutory fee tail which provided for the vesting of the fee tail on the death of the person to whom the fee tail was granted. *See* § 442.470, RSMo 1949. They argue that although the original grantors created successive life estates,

---

**2.** Appellants' brief does not comply with the provisions of Rule 84.04, Missouri Court Rules (2002). No precedential value exists in setting out the three points or in reciting its many violations of the foregoing rule. The three points are interrelated and essentially postulate but one point of error. Respondents appear to have been able to discern the basic contentions of Appellants' brief. To prevent manifest injustice or miscarriage of justice we gratuitously exercise our discretion to review the three points conjunctively. *See* Rule 84.13(c), Missouri Court Rules (2002).

the remainder in fee vested upon the death of the person to whom the bodily heirs were limited, i.e., George Franklin Proffer, not Margueritte Proffer. We agree.

■■■ "According to a well-established rule, a deed is to be construed as nearly as possible in harmony with the purpose of the grantor, to be determined from the terms of the instrument." *Elsea v. Smith*, 273 Mo. 396, 202 S.W. 1071, 1075 (1918). "It is the primary rule of construction of contracts, deeds and wills that they must be construed as a whole, giving effect to every part if it is fairly possible to do so, and thus determine the true intention of the parties." *Ott v. Pickard*, 361 Mo. 823, 237 S.W.2d 109, 111–12 (1951). Accordingly, "[t]he intention of the grantor, as gathered from the four corners of the instrument, is now the pole star of construction." *Davidson v. Davidson*, 350 Mo. 639, 167 S.W.2d 641, 643 (1943). "That intention may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it; and the court will enforce it no matter in what part of the instrument it is found." *Id.*

Here, the original grantors, Elon and Berta Proffer, used the language of fee tails in both deeds, to-wit in the first deed: "to the bodily heirs of said George Franklin Proffer;" and "at his death to his bodily heirs . . .;" and "then to the bodily heirs of said George Franklin Proffer." Likewise, in the second deed, to-wit: "to the heirs of the body of George Franklin Proffer;" and "at his death to his bodily heirs . . ." and "to the heirs of the body of George Franklin Proffer." *See Easter v. Ochs*, 837 S.W.2d 516, 518 (Mo. banc 1992); *Davidson*, 167 S.W.2d at 642 ("The words of inheritance and procreation in the deed— 'unto said party of the second part and the heirs of his body'—created an estate tail.").[3]

However, "Missouri abolished fee tails long before 1937." *Easter*, 837 S.W.2d at 518. While each deed created an estate tail at common law, any such estate created has been transformed by the provisions of § 442.470, RSMo 1949, the successor to Sec. 3498, R.S.1939 Mo.R.S.A.[4] *See Grimes v. Rush*, 355 Mo. 573, 197 S.W.2d 310, 311 (1946); *Davidson*, 167 S.W.2d at 642; *see also Pixlee v. Petty*, 274 S.W.2d 257, 260 (Mo.1955). Thus, in *Easter*, where "Adolph devised . . . farms . . . to Erwin using the language of fee tails— respectively, 'to him and his bodily heirs' and to 'Erwin Ochs and the heirs of his body[']," the Missouri Supreme Court set out that such a "devise using the language of fee tails creates: 1) a life estate in the named devisee; 2) a remainder in the heirs of the body of the named devisee; and 3) a reversion to the devisor. § 3108, RSMo 1929 (currently codified at § 442.470 RSMo 1986)." *Easter*, 837 S.W.2d at 518;

---

3. "'Estates tail are estates of inheritance which, instead of descending to heirs generally, go to the heirs of the donee's body, which means his lawful issue, his children, and through them to his grandchildren in a direct line, so long as his posterity endures in a regular order and course of descent, and on the extinction of such issue the estate determines.'" *Davidson*, 167 S.W.2d at 642 n. 1 (quoting 31 C.J.S., *Estates* p. 35 § 21).

4. Section 442.470, RSMo 1949, provides that:
In cases where, by the common or statute law of England, any person might become seized in fee tail of any lands, by virtue of any devise, gift, grant or other conveyance, or by any other means whatever, such person, instead of being seized thereof in fee tail, shall be deemed and adjudged to be, and shall become, seized thereof for his natural life only; and the remainder shall pass in fee simple absolute to the person to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass according to the course of the common law, by virtue of such devise, gift, grant or conveyance.

*see Bullock v. Porter,* 365 Mo. 572, 284 S.W.2d 598, 602 (1955).

Likewise, in *Mattingly v. Washburn,* our high court noted that:

Numerous cases hold that under the laws of this State, R.S.1939, Secs. 3498, 3500, Mo.R.S.A., [§§ 442.470 and 442.490, RSMo 1949] conveyances to one and his or her bodily heirs (creating an estate tail under the common law as in the instant deeds) carves out of a grantor's fee-simple estate certain lesser estates, viz.: first a life estate in the first taker; next a contingent remainder in those qualifying as 'bodily heirs' on the death of the first taker, while the fee, that is, the reversion, remains in the grantor, his assigns, heirs or devisees pending the determination under the original grant of its vesting or falling in for want of takers as 'bodily heirs' of said grantee for life. We need not repeat here what has been said in the adjudicated cases. So, under the authorities Nettie K. Mattingly took a life estate under the deeds in question and her son John a contingent remainder, the contingency of his estate becoming vested being his qualifying upon the death of Netti K. as her 'bodily heir'....

*Mattingly v. Washburn,* 355 Mo. 471, 196 S.W.2d 624, 626 (1946) (citations omitted).

In *Pixlee,* the Missouri Supreme Court observed that:

While testator devised a life estate to his wife, the effect of the devise to [his daughter] and her bodily heirs was, by force of the statute [§ 442.470, RSMo 1949], to create in her a life estate with a contingent remainder in fee simple in her bodily heirs—a remainder contin-

gent upon the event of their being in being at the time of her death.

*Pixlee,* 274 S.W.2d at 260.[5]

[W]hen, according to the terms of a ... grant, or other conveyance, an estate tail is attempted to be created, that the first taker shall be seised thereof for his nature [sic] life only, and that the remainder shall vest in fee in the persons to whom the estate tail would, on the death of the first grantee ... pass in the course of the common law by virtue of such ... grant....

*Elsea,* 202 S.W. at 1075.

We do not agree with Appellants' contentions that by use of the word "then," following the life estate in the spouse of George Franklin Proffer, that grantors sought to delay the vesting of the remainder fee interest until after his spouse's death.

 First, employing an auxiliary rule of construction, we note that as a general rule, "[t]he law favors vested estates, and the rule is that estates shall be held to vest at the earliest possible period, unless a contrary intention is *clearly manifested* in the grant." *Tindall v. Tindall,* 167 Mo. 218, 66 S.W. 1092, 1094 (1902) (emphasis added).

Here, the word "then" was not utilized in both deeds, but only in the premises of the first deed. Additionally, numerous clauses in both deeds make reference to the "heirs of the body of George Franklin Proffer," and it is apparent from our review of the deeds that the death of the person to whom the bodily heirs were limited, as in common law of fee tails, was George Franklin Proffer, the son of the original grantors and not his spouse Margueritte. This is manifested by the fact

---

**5.** The *Pixlee* court also observed that "[t]here is no positive law which prevents a testator from creating successive life interests, provid-

ed the rule against perpetuities has not been violated." *Pixlee,* 274 S.W.2d at 260.

that the premises of the first deed in pertinent part reads: "by and between Elon Proffer and Berta Moore Proffer, his wife ... and George Franklin Proffer for his lifetime and at his death to his wife ... for her lifetime only, *and then to the Bodily heirs of said George Franklin Proffer.*" Additionally, the premises of the second deed reads, in pertinent part, as follows: "by and between Elon Proffer and Berta Moore Proffer, his wife ... and George Franklin Proffer for his lifetime and at his death to his wife ... for her lifetime and at her death *to the heirs of the body of George Franklin Proffer.*" (Emphasis added). *See Grimes,* 197 S.W.2d at 312; § 442.490, RSMo 1949.[6]

■ Lastly, we also note that adverbs of time, such as "then," "thereafter," "when," etc., appearing in conveyances or devises of remainder interest in property are held to refer only to the enjoyment and possession of the property by remaindermen, and generally do not postpone the vesting of the remainder interest. *See Sanders v. Jones,* 347 Mo. 255, 147 S.W.2d 424, 427 (1940) (adverbs of time "and like expressions, do not make a contingency, but merely denote the commencement of the enjoyment of the estate."); *see also Tapley v. Dill,* 358 Mo. 824, 217 S.W.2d 369, 373 (1949) ("Adverbs of time in grants creating remainders are construed, absent a contrary intention, to relate to the commencement of the remaindermen's enjoyment and possession of and not the vesting of his title to the property.").

Thus, in *Uphaus v. Uphaus,* 315 S.W.2d 801 (Mo.1958) our high court stated that "we think testator's language, 'after the expiration of the life estate ... and after the payment of the said sum of three thousand dollars ... to ... Clara,' were expressions which, in the absence of some clearly expressed contrary intent, referred to the time that the remaindermen were to have possession and not to the time when the estates were to vest." *Id.* at 805. And, with particular reference to the adverb "then," our high court in *Tindall* had occasion to consider a conveyance that contained in the granting clause the language "to the said Lusina 'for and during her natural life, and then to the issue of her body, forever after.'" *Tindall,* 66 S.W. at 1093. The court held that by "[t]he use of the word 'then' in the granting clause ... such words in such connection make no contingency. They relate to the time of the enjoyment of the estate, and not to the time of the vesting of the interest." *Id.* at 1094; *see also Heady v. Hollman,* 251 Mo. 632, 158 S.W. 19, 22 (1913) (the word "then" introducing the phrase designating the remaindermen, "or an equivalent expression, is usually employed in a grant of this kind, and the effect is to denote the time when the remaindermen are to have possession, not to postpone the vesting of their interests.").

■ Accordingly, in the instant matter, the bodily heirs of the "first grantee ... in tail [George Franklin Proffer]," enjoyed a contingent remainder interest in the land prior to George Franklin Proffer's death. *See Pixlee,* 274 S.W.2d at 260; *Mattingly,* 196 S.W.2d at 626; *Grimes,* 197 S.W.2d at 311–12; *see also Bullock,* 284 S.W.2d at 602. The bodily heirs of George Franklin Proffer, i.e., George F. Proffer Jr., Charles Thomas Proffer, Michael David Proffer and Shabie Proffer Bird, were determined

---

**6.** Section 442.490, RSMo 1949 provides that: Where a remainder shall be limited to the heirs, or heirs of the body, of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heir or heirs of the body of such tenant for life shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them.

at the death of their father in 1966, since they survived his death. *See Ott,* 237 S.W.2d at 111. As a bodily heir of George Franklin Proffer, Charles Thomas Proffer's interest in the land in question became a vested remainder interest at his father's death, subject only to the prior life estate of George Franklin Proffer's spouse, per the terms of the original granting instruments. *Mattingly,* 196 S.W.2d at 626; *Pixlee,* 274 S.W.2d at 260; *see also* § 442.480, RSMo 1949.[7] As previously set out, "[t]he law favors vested estates, and no remainder will be construed to be contingent which may, consistently with the intention, be deemed vested." *Tindall,* 66 S.W. at 1094. "It is characteristic of a vested remainder that the legal title comes to reside at once in an identifiable person or persons, although his or their possession may be postponed until termination of the proceeding estate." *Graves v. Hyer,* 626 S.W.2d 661, 664 (Mo.App.1981).

From our review of the deeds in question, it is clear that the grantors intended that the bodily heirs of their son, George Franklin Proffer, were to be determined at his death. *See* discussion, *supra.*

Charles Thomas Proffer, as heir of the body of the first grantee, George Franklin Proffer, took as purchaser under § 442.490, RSMo 1949, under conveyance from Elon Proffer and Berta Moore Proffer, and not by inheritance from his father. *Grimes,* 197 S.W.2d at 312; *Cook v. Daniels,* 306 S.W.2d 573, 576 (Mo.1957). Stephanie Paige Proffer took her father Charles Thomas Proffer's one-fourth undivided vested remainder interest in the land by intestate descent upon his death in 1974. § 474.010(2), RSMo 1969. Respon-

dents took by devise under the Last Will and Testament of Stephanie Paige Proffer.

The judgment of the circuit court is affirmed.

MONTGOMERY, P.J. and GARRISON, J., concur.

---

7. Section 442.480, RSMo 1949 provides:

 Where a remainder in lands or tenements, goods or chattels shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, *or heirs of his* *body,* or without issue, or on failure of the issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor. (Emphasis added.)